Mark L. Smith (SBN: 213829; applied for admission to Northern District)
marsmith@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone:     213-615-1700
Facsimile:     213-615-1750

Ronald Y. Rothstein (Not admitted in California)
rrothstein@winston.com
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, Illinois 60601
Telephone:     312-558-5600
Facsimile:     312-558-5700

Leda M. Mouallem (SBN: 221258)
lmouallem@winston.com
**WINSTON & STRAWN LLP**
101 California Street  Suite 3900
San Francisco, California  94111-5802
Telephone:     (415) 591-1000
Facsimile:     (415) 591-1400

Attorneys for Plaintiff CHRISTOPHER BOSH

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BOSH, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> LUIS ZAVALA, an individual, <br><br> Defendant. | Case No. CV 09 80166 MISC <br><br> **EX PARTE APPLICATION FOR TURNOVER ORDER UNDER FRCP 69(a) AND CAL. CIV. PROC. CODE § 699.040(a), AND FOR INTERIM ORDER PROHIBITING THE TRANSFER OF, OR CHANGE OF REGISTRANT INFORMATION CONCERNING, THE DOMAIN NAME HOLDINGS OF JUDGMENT DEBTOR LUIS ZAVALA AND REQUIRING TURNOVER OF DOMAIN NAME HOLDINGS OF JUDGMENT DEBTOR LUIS ZAVALA** <br><br> (NO HEARING REQUIRED) |

Judgment Holder Christopher Bosh ("Bosh") hereby makes this ex parte application (the "Application") for a turnover order under Federal Rule of Civil Procedure 69(a) and California Code of Civil Procedure section 699.040 prohibiting the interim transfer of the subject domain names and

1

**JUDGMENT CREDITOR BOSH'S *EX PARTE* APPLICATION FOR TURNOVER ORDER**

requiring Judgment Debtor Luis Zavala ("Zavala") and third parties and requiring Zavala's domain name holdings to be transferred to Bosh so that those holdings may be sold in satisfaction of Bosh's federal court judgment against Zavala (the "Judgment"). Ex parte relief is proper pursuant to California Code of Civil Procedure section 699.040(a).

## STATEMENT OF RELIEF REQUESTED

By this *Ex Parte* Application, Bosh seeks an order requiring that judgment debtor Zavala turnover the domain names identified in Exhibit F to the Declaration of Marc Trachtenberg in Support of Ex Parte Application for Turnover Order ("Trachtenberg Declaration" or "Trachtenberg Decl.") and preventing interim transfer of those domain names prior to them being turned over.

## MEMORANDUM OF POINTS AND AUTHORITES

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should effectuate transfer of the domain names identified in Exhibit F to the Trachtenberg Declaration in partial satisfaction of Bosh's judgment against Zavala and

2. Whether the Court should issue an order preventing third parties from transferring or otherwise moving the domain names identified in Exhibit F to the Trachtenberg Declaration prior to their transfer to Bosh.

## INTRODUCTION

Zavala a serial cybersquatter who has registered hundreds of domain names incorporating the names of various professional, college, and high school athletes as well as well-known entertainers, product names, and other entertainment properties, has actively evaded efforts to collect Bosh's civil judgment against him in violation of Court Order. As the Ninth Circuit has observed, under California law, domain names are personal property, and valuable personal property at that. Bosh seeks the turnover of Zavala's domain name holdings to satisfy the Judgment and protect other athletes and the general public from Zavala's illegal activities.

California law does not require a judgment holder such as Bosh to seek court intervention or even to give notice before levying upon a judgment debtor's personal property. Bosh finds itself handicapped in its collection efforts, however, by the unusual nature of the personal property at

issue. Bosh therefore also requests that, prior to ordering the turnover of Zavala's holdings, the Court enter an interim order prohibiting Zavala, his agents or third parties from transferring or altering registration information relating to Zavala's domain name holdings prior to transferring them to Bosh.

At least two independent bases justify Bosh' request to proceed ex parte. The first is California Code of Civil Procedure 699 .040—applicable under Federal Rule of Civil Procedure 69(a)—which explicitly permits a judgment holder to seek an order requiring the turnover of personal property on an ex parte basis. The second is the nature of the property (domain names) here at issue, insofar as Zavala or a third party could, in a matter of minutes, obscure Zavala's ownership of, or even transfer, Zavala's domain name holdings, thus effectively thwarting Bosh's collections efforts.

In addition to this Memorandum, Bosh submits two documents in support of the Application:

i) *Declaration of Marc Trachtenberg in Support of Ex Parte Application for Turnover Order*, authored by the Bosh attorney whose Internet and other research has uncovered several hundred of Zavala's domain names, which includes a list of domain names that Bosh believes in good faith to be owned by or registered to Zavala; and

ii) [Proposed] *Interim Order Prohibiting Transfer of, or Change of Registrant Information Relating to, the Domain Name Holdings of Judgment Debtor Luis Zavala and 2) Requiring Turnover of Domain Name Holdings of Judgment Debtor Luis Zavala* (the "Turnover Order"), which Bosh respectfully requests that the Court enter at its earliest convenience. Bosh intends to serve the Interim Order on Zavala, on those domain name registrars through which Bosh believes Zavala to have registered most or all of his holdings, and on central domain name registry Verisign, Inc.

## FACTUAL BACKGROUND

A.  **The Judgment**

Applicant Bosh is the holder of a federal court judgment against Zavala. As established by the Writ, the Judgment, including interest and attorney's fees, is worth more than $113,020.62.

Bosh has been unable to collect a cent from Zavala, primarily because it has experienced great difficulty locating Zavala and identifying assets in relation to which a collection action might be brought. (Trachtenberg Decl. at ¶ 13.)

### B. Zavala's Domain Name Holdings

Through the use of Internet search engines and other investigative means, Bosh's attorney Marc Trachtenberg has identified the pseudonym Hoopology.com used by Zavala (in conjunction with Zavala's own email address) to administer his domain name holdings. (Trachtenberg Decl. at ¶ 4-7.) Trachtenberg also has identified several hundred domain names - most registered through domain name registrar GoDaddy.com - corresponding to that pseudonym and otherwise believed to owned by and registered to Zavala. (*Id*. at ¶ 8.)

### C. Risk of Transfer of, or Change of WHOIS Registrant Information Relating to, Zavala's Domain Name Holdings

Generally speaking, WHOIS ownership and registration information can be changed at any time by the registered owner or someone working on the registered owner's behalf. (*Id*. at ¶ 14) To change an ownership record - or even a series of ownership records - all a registered owner needs to do is log into their account with the independent registrar through which they processed the corresponding registration, go to their owner profile, and input new information. (*Id*.)

Registrars typically do not verify that WHOIS ownership and registration information pertains to an actual person or entity, much less to the person or entity that actually owns or controls the domain name. (*Id*.)

## ARGUMENT

### A. The Northern District Is the Proper Venue for the Application

Title 28 of the United States Code, Section 1391 states, in pertinent part: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought [ ] in ... a judicial district in which ... a substantial part of property that is the subject of the action is situated." The "property" at issue in this action, Zavala's domain name holdings, are located in the District, insofar as the district contains Verisign, the sole registry for all .com and .net domain names (Trachtenberg Decl. ¶ 15 ). *See, e.g.*, 15 U.S.C. § 1125(d)(2),

4

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

providing for venue in certain cybersquatting actions "in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located".) Accordingly, the only logical venue for the Application is the District from within which Verisign exercises exclusive control over the central registry of .com and .net domain names. (*Id.*)

### B. The Application is Governed by California Law

Federal Rule of Civil Procedure 69(a) states: "The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought. . . " As the District is located in California, California law applies to the Application and OS Holdings' collection efforts.

### C. Zavala's Domain Name Holdings Are Personal Property Subject to Execution Under the Writ

Under California law, domain names are personal property. *See Kreman v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003). As the Ninth Circuit observed, "like other forms of property, domain names are valued, bought and sold, often for millions of dollars (citation omitted), and they are now even subject to *in rem* jurisdiction, see 15 U.S.C. §1125(d)(2)." *Id*. Also under California law, all property that is subject to enforcement of a money judgment, including property in the possession of a third party, may be levied upon under a writ of execution. *See* Cal. Civ. Proc. Code §§ 695.010, 699.710, 700.040. Thus, Bosh may execute upon Zavala's domain name holdings under the Writ.[1]

---

[1] One court has attempted to distinguish domain names as intangible property not subject to transfer under Section 669.040. *See Palacio Del Mar Homeowners Assoc., Inc. v. McMahon*, Nos. G040349, G040412, 2009 WL 1668294 at *3 (Cal. App. June 9, 2009). Even if the *Palacio* court's interpretation was universally accepted and followed, the case does not apply to the circumstances present here. In *Palacio*, the domain name at issue was—unlike here—not in the judgment debtor's possession, which alone precluded transfer. *Id*. More significantly, the judgment debtor had a legal right to hold and use the domain name in *Palacio* unlike Zavala who has no legal interest in the

### D. Bosh Has a Statutory Right to Seek, and Needs, the Interim and Turnover Orders

California Code of Civil Procedure Section 699.040 states, in pertinent part:

> (a) If a writ of execution is issued, the judgment creditor may apply to the court ex parte, or on noticed motion if the court so directs or a court rule so requires, for an order directing the judgment debtor to transfer to the levying officer either or both of the following :
>
> (1) Possession of the property sought to be levied upon if the property is sought to be levied upon by taking it into custody.
>
> (2) Possession of documentary evidence of title to property of or a debt owed to the judgment debtor that is sought to be levied upon.
>
> An order pursuant to this paragraph may be served when the property or debt is levied upon or thereafter.
>
> (b) The court may issue an order pursuant to this section upon a showing of need for the order.

Here, Bosh seeks "[p]ossession of the property sought to be levied upon" in the form of the Turnover Order. Although Section 699.040 typically contemplates transfer to a "levying officer," who would sell the levied property at auction to satisfy the judgment, this is not practical here for two reasons:

> 1) The domain names in Zavala's possession incorporate the names of various professional, college, and high school athletes as well as well-known entertainers, product, and other entertainment properties. Thus, the auctioning off of these domain names could result in purchase of the domain names by third parties who would put them to the same or

property because he holds the domain names Bosh seeks here in violation of federal anti-cybersquatting laws. *Id.* Zavala fails to satisfy the prerequisite interest in the property described in *Palacio* and is unable to avail himself of the protection that, under the *Palacio* court's interpretation, might shield intangible property from transfer. *Id.* at *2.

6

JUDGMENT CREDITOR BOSH'S *EX PARTE* APPLICATION FOR TURNOVER ORDER

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

similar illegal uses as Zavala, which would result in significant harm to the athletes and owners of the product names and entertainment properties, as well as to the public at large.

2) While domain names are personal property under California law, they are not physical property. Unlike other intangible property rights such as stocks or bonds though, there is no paper certificate or other physical manifestation of ownership that a U.S. Marshall or other levying officer could take possession of. Rather, ownership records are maintained electronically by individual registrars. However, this ownership information is not controlling as any person with access to the registrar account can do as they please with a domain name housed in that account. Accordingly, for practical purposes, the owner of a domain name is the entity with access to the registrar account that holds the domain name. Transferring a portfolio of approximately 800 domain names to a registrar account under the control of the U.S. Marshall Service would present a significant technical burden on the Marshall Service, and thus is impractical. Moreover, as owner of the account holding the domain names, the U.S. Marshall Service would be required to pay renewal and maintenance fees for the domain names or the individual registrars would let the domain name registrations lapse.

Accordingly, Bosh proposes that the Court order transfer of the domain names directly to Bosh.

Bosh will make reasonable efforts to contact the rightful owners of the domain names and transfer the domain names to those individuals and companies. Upon contacting the rightful owner of a domain name, Bosh would offer up the services of his web development company, Max Deal Technologies, to manage the domain name and create a website for the person or company. Regardless of whether the rightful owner chose to utilize the services of Bosh's company, Bosh would transfer the domain name to the rightful owner at no charge upon request. The opportunity to offer up his company's services to the rightful owners of the domain names currently in Zavala's possession represents a financial benefit to Bosh, and the only realistic prospect Bosh has to collect on the Judgment. This solution would also serve to stop the ongoing harm to a large number of athletes and owners of the product names and entertainment properties, whose rights are currently being violated as well as to the public at large who are confused by Zavala's illegal actions.

1   Therefore, the Turnover Order is necessary to Bosh's efforts to collect on the Judgment,
2   because Bosh cannot without the cooperation of Zavala and third parties - namely, GoDaddy.com,
3   other independent registrars, and Verisign—effectively transfer of Zavala's holdings to Bosh.
4   (Trachtenberg Decl. ¶14) Because the Turnover Order is the only realistic prospect Bosh has for
5   collecting on the Judgment and Bosh needs the requested order to effectively execute upon Zavala's
6   domain name holdings, the Court should enter it as requested.

### E. The Application May, and Should, Be Heard Ex Parte

As set forth above, Section 699.040 permits a judgment holder to apply for a turnover order ex parte unless "the Court so directs or a court rule so requires." Bosh is aware of no applicable order—whether by the Court or any other tribunal requiring Bosh to provide Zavala notice of Bosh's collections efforts. Furthermore, the relevant Court rule, Civil Local Rule 7-10, expressly permits ex parte proceedings "if a statute . . . authorizes the filing of an ex parte motion in the circumstances and the party has complied with the applicable provisions." Because Bosh has complied with California law in all respects, the Court should hear the Application on an ex parte basis.

In weighing the appropriateness of ex parte proceedings, the Court should bear in mind that this is a post-judgment collections action. Accordingly, due process and statutory protections relevant to a request for a pre-judgment freeze order do not apply. *See, e.g., Brown v. Liberty Loan Corp. of Duval*, 539 F.2d 1355, 1366 (CA Florida 1976) (reasoning that "[u]nlike the prejudgment creditor, the creditor here has a judicially awarded judgment"). The Court also should consider that this is a case in which the judgment debtor—an established cybersquatter who has already attempted to conceal his ownership and transferred a domain name to a registrar outside the United States in an attempt to evade the court's order—could transfer or obscure the assets in question in little time and with next to no effort.(Trachtenberg Decl. ¶ 14) The Court should therefore hear the Application ex parte.

### F. The Court Has the Inherent Power to Prohibit the Transfer of, or Change of Registrant Information Relating to, Zavala's Holdings

Courts have the inherent power to preserve evidence, a power akin to administering membership of the bar and dismissing cases for failure to prosecute. *See Pueblo of Laguna v. United*

8

JUDGMENT CREDITOR BOSH'S *EX PARTE* APPLICATION FOR TURNOVER ORDER

1  *States*, 60 Fed.Cl. 133, 135-38 (Fed.Cir. 2004); *see also Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 43233 (W.D.Pa. 2004) (holding that "motions for preservation of documents or things and orders granting such motions have become widely used in place of restraining orders or injunctions . . . It must [] be recognized that district courts have the power to control the discovery process and overall case management"). Even in the pre-judgment context, Courts also have the power to issue "freeze" orders designed to prevent a party from transferring assets otherwise available to satisfy a money judgment. *See Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881-82 (9th Cir.2003).

Bosh seeks to execute on a writ of attachment issued pursuant to an unchallenged federal court judgment. (*Supra* at Section II A.) Accordingly, Bosh's right to levy upon Zavala's domain name holdings is beyond question. Additionally, Zavala will suffer no cognizable harm from an order prohibiting him from transferring or obscuring his ownership and registration of his domain name holdings, since under California law those holdings would be subject to direct levy. In contrast, a failure to freeze Zavala's domain name holdings and to preserve related WHOIS registrant information would fundamentally, perhaps permanently, frustrate Bosh's collections efforts, given the ease with which Zavala could (and has) changed that information or altogether transfer his domain name holdings as he has done in the past. (Trachtenberg Decl. ¶ 14) Because all the equities tilt in favor of freezing Zavala's domain name holdings and entering of the Turnover Order, the Court should enter the Turnover Order at its earliest convenience.

## CONCLUSION

For the reasons stated above, the Court should at its earliest convenience, enter the Turnover Order effectively transferring ownership and control of such domain names to Bosh for distribution to the proper owners of those domain names in satisfaction of the Judgment, for service upon Luis Zavala, and order Zavala to sit for a Judgment Debtor's Examination.

DATED: August 14, 2009          **WINSTON & STRAWN LLP**

By: _/s/ Leda Mouallem_
Mark L. Smith
Leda M. Mouallem
Attorneys for Plaintiff CHRISTOPHER BOSH

9

**JUDGMENT CREDITOR BOSH'S *EX PARTE* APPLICATION FOR TURNOVER ORDER**